Susan CUSHING et al., Appellants,

v.

The FORT WORTH NATIONAL BANK
et al., Appellees.

No. 15659.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 18, 1955.

Rehearing Denied Dec. 16, 1955.

Robert C. Carr, Ottawa, Ill., Jack L. Stuart and J. Manual Hoppenstein, Dallas, for appellant.

McGown, Godfrey, Logan & Decker, Winifred Hooper, Jr., and R. W. Decker, Fort Worth, for appellee The Fort Worth Nat. Bank.

John Ben Shepperd, Atty. Gen. of Texas; W. V. Geppert and Marietta McGregor Payne, Asst. Attys. Gen., for appellee John Ben Shepperd, Atty. Gen. of Texas.

MASSEY, Chief Justice.

From a declaratory judgment in behalf of the defendants, the plaintiffs appealed.

Declaratory judgment affirmed, but accompanying injunction dissolved.

The initial cause of action was prosecuted in a suit by the heirs of the estate of W. H. Grove, deceased, to have it declared that said estate was completely administered; that the trust estate established by the will of the deceased and being administered by the defendant bank had accumulated a surplus over and above the amount in trust necessary to accomplish the purposes of the trust; that the rights and powers of the trustee be determined and limited; that the rents and royalties collected by the trustee be declared as intestate income, etc. The defendant bank sought the declaration by the court that the last will and testament of the deceased, in establishing the trust, evidenced the general intent of said testator to devote his property and assets to general charitable purposes, of which the particular purpose mentioned by the will would merely be a part,—whereby, if and in the event circumstances should arise operating to defeat the accomplishment of the particular purpose mentioned the doctrine of "cy pres" would apply to the trust, and that plaintiff had no present or potential interest in the will of the deceased or in the trust estate created under authority of its terms. The bank further sought a permanent injunction restraining the plaintiffs from instituting or threatening to institute any further and additional action or actions seeking to appropriate for themselves the properties of the deceased or his trust estate, or the income or profits therefrom.

The trial court denied the relief sought by the heirs and granted that applied for by the bank, including the permanent injunction. The true parties at interest are the heirs and the bank, as executor and trustee, and will be dealt with in the opinion under the terminology: "heirs" and "bank".

W. H. Grove, the deceased, died in 1940, leaving a last will and testament which has been admitted to probate, with letters issued. The bank proceeded to administer the estate of said deceased, and to act as the trustee in connection with the trust established by the terms of the will.

After having made numerous specific bequests in his will, the testator directed the establishment of what he called a "trust fund" for the investment in a "home" in Fort Worth, Texas, "mostly for the benefit of the aged and helpless". He indicated that his primary desire was that most of the proceeds derived from his landed property be invested in the "home" contemplated by him. He authorized the trustee of said estate to elaborate upon the restrictions for a home for old people only, and directed that the trustee might, if wisdom dictated, permit other white people to enjoy and live in the "home". The language of the will in other respects amply warrants the construction, placed upon it by the trial court, that not only was the physical property to be delivered unto the

trustee for the purposes of the trust, but also the proceeds from any sale thereof or of interests therein, and any income by way of rents, royalties or other revenues received from property not likewise converted. We believe a proper construction of the will to be that,—except for the specific bequests made therein,—all of the property of the testator was delivered in trust along with any income or profits to be derived therefrom. See generally 44 Tex. Jur., "Wills", p. 680 et seq., secs. 134–168 and p. 827 et seq., secs. 253–263.

That being true, a question remaining to be settled would be as to the reversionary interests, present or potential, in the event of the failure of the trust or in the event of the accumulation of any surplus over and above the amount necessary to accomplish the trust purposes. Should we be of the opinion that the trial court was clothed with jurisdiction to presently adjudicate the question, and, further, was correct in its holding that the trust was such that there could be no reversion, then there would be no further question necessary of determination. Should our opinion be to the contrary, though in accord with the court's assumption of jurisdiction, then we would find it necessary to consider whether the trust had failed or might fail because of present or perhaps future impossibility of the accomplishment of its purposes, or of a past or future complete accomplishment of its purposes. We would also, in that event, find it necessary to determine whether there is any present surplus in the trust over and above the amount requisite to accomplish its purposes, as well as whether there might be such at a future date. Along with such a determination would be the matter of the right, title and interest in any reversionary property or surplus as between the heirs and the bank.

After consideration of the questions posed, and of the most excellent briefs on the matter by the parties to this appeal, we have reached the conclusion that the trial court was not in error, and that there can be no reversion of the property in trust.

The real matters in dispute in this case would be fully, finally and forever settled if we are authorized to hold that the trial court was empowered to enter the declaratory judgment it did enter in respect to the following language: " * * * that the doctrine of cy pres is applicable to the administration of such trust, and should at any time in the future the Trustee of such charitable trust (established and administered under authority of the will of W. H. Grove, deceased) find that it has assets not needed in the construction, care and maintenance of the W. H. Grove Home for the Aged and Needy, then under the doctrine of cy pres, the Trustee in its lawful discretion shall apply such assets for charitable purposes in assistance of the aged and needy, in accordance with the general charitable intent as evidenced by the will of W. H. Grove, Deceased, * * *."

While we are in some doubt as to the authority seemingly so presently conferred upon the trustee subject to condition subsequent, there would be nothing in the language purporting to do so of which the appellants could complain since it does nothing more than eliminate them as parties who might have a justiciable interest in connection with any contest or complaint of actual or threatened application of a part of the trust estate to charitable purposes other than that purpose primarily intended by the deceased.

In view of the fact that the appellants are the heirs of W. H. Grove, deceased, interested in the residue of the deceased's estate should there ever be any such remaining after the administration of the trust, we are of the opinion that the subject matter of the trial court's declaration as embodied in the judgment constitutes a res as to which the Uniform Declaratory Judgments Act empowered it to declare the rights, status, and legal relations of appellants herein. 4 Tex.Jur., Ten-Year Supplement, "Declaratory Relief", p. 131, "Trusts and Estates", sec. 18. An actual controversy has arisen between the heirs and the bank, whether considered as to the present existence of a surplus in the trust estate or as to any future surplus, and a like controversy might

be said to exist upon the matter of the potential reversion of all the trust property. The nature and object of a declaratory judgment is in our opinion sufficiently broad in scope to be applied to the controversy here dealt with and is an effective means for the determination of the rights of the parties. 4 Tex.Jur., Ten-Year Supplement, "Declaratory Relief", p. 123, "Nature and Object", sec. 3. While there have been several prior suits between the same parties, in view of the form of such suits, none of which sought declaratory relief, we are of the opinion that the material matters before us were joined in issue for the first time in the instant suit.

What was constructively decided by the trial court was that if the property given in trust to be applied to a particular charitable purpose is or becomes impossible or impracticable or illegal to carry out for such particular purpose the trust will not fail but the court will direct or permit the trustee to apply the property to some other charitable purpose which falls within the general charitable intention of W. H. Grove, deceased,—he, in the creation of the trust, having manifested a more general purpose to devote the property to charitable purposes. See Restatement of the Law, Trusts, sec. 399. Also decided, and in terms express in character, was that if and in the event circumstances arising in the future operate to develop a surplus over the amount requisite to accomplish the particular charitable purpose of the deceased, it (the court) would, upon proper application made therefor by the trustee, direct or permit an application of the surplus trust property to other charitable purpose or purposes coming within the scope of the deceased's more general charitable intention. Whether or not the trial court had the authority to direct or permit the application of any trust property "cy pres" at the date of its judgment is unnecessary of determination and is not determined upon the appeal.

■ Of course, on the face of the judgment it appears as a present judicial declaration that the doctrine of cy pres will apply to any trust surplus, should developments in the future so operate that the trust estate accumulates such a surplus. However, in viewing the judgment any seeming impropriety thereof as of the time of its entry is obviated when it is remembered that an action for a declaratory judgment is neither legal nor equitable, but is sui generis, i. e., a judgment peculiar to the form of action under consideration.

■ The declaratory judgment so entered, subject to appeal, of course, finally disposes of all the disputes between the appellants and the bank and conclusively establishes the fact that the heirs of W. H. Grove, as such, neither presently nor in the future have any interest in his trust estate.

Of course, the heirs would be entitled to have the judgment reversed if in our construction of the will of the deceased we should disagree with the trial court that the doctrine of cy pres would apply to the trust under the contingencies which might conceivably develop in the future. But we agree with the trial court in this regard. In our opinion the deceased's will affirmatively discloses that in the creation of the trust the testator evidenced a more general charitable purpose, to-wit: the aid of the old people and helpless people of the community—than the particular single purpose of establishing the home for them. The following language is noted from the will and the codicil appended thereto: *Item 1:* "I desire my property, as herein stated in words and spirit to be distributed, according to the provisions herein, after my death to my friends, relatives, and to charitable purposes, in trying to help, in the latter case some of the unfortunate old and helpless in and around Fort Worth, Texas." *Item 21:* "My idea is that the bulk of my estate shall be given for charitable purposes, * * *." *Codicil, Item 1:* "* * * for my heart is set on providing my life earnings for the worthy old and helpless men and women and mean to do so in the disposition of my property except the provisions made in my will for relatives and friends, * * *. I want it

clearly understood that all of my gifts designated in this codicil and my will are given for charitable purposes except the personal gifts to some friends and relatives. * * my general estate, which would finally after the personal gifts are provided for would all go for charitable purposes, * * *."

Viewing the question as though it were presented upon an application by the trustee for a decree permitting or directing the devotion of a surplus in the trust funds, or the trust funds themselves, "cy pres", we have no doubt that the court would find a more general charitable intent on the part of the settlor of the trust (the testator W. H. Grove) than the primary purpose alone, and in view of such finding, permit or direct a proper departure by the trustee charged with the duty of administration. See 9 Tex.Jur., "Charities", pp. 54–55, secs. 6–7; Restatement of the Law, Trusts, secs. 395–401 (in particular sec. 400); 10 Amer.Jur., p. 681, "Charities", secs. 130–131; 14 C.J.S., Charities, § 52, p. 519; Scott on Trusts, sec. 400; Bogert, The Law of Trusts and Trustees, secs. 436–437; Borchers v. Taylor, 83 N.H. 564, 145 A. 666, 63 A.L.R. 880; 3 Southwestern Law Journal 174; Inglish v. Johnson, 1906, 42 Tex.Civ.App. 118, 95 S.W. 558, error refused; Jones' Unknown Heirs v. Dorchester, Tex.Civ.App., Amarillo 1920, 224 S.W. 596, writ dismissed; Scott v. Sterrett, Tex.Civ.App., Dallas 1950, 234 S.W.2d 917, writ refused, n. r. e.

■ Since we are of the opinion that the devotion of the trust funds, or surplus, "cy pres" would be proper were this the time for application therefor to be made, and since we are of the further opinion that the question is one proper for determination in the declaratory judgment suit brought in the trial court despite the fact that it was not a suit in which such an application was made, we reach an ultimate conclusion that the declaratory judgment entered by the court below was proper.

■ The trial court issued a permanent injunction prohibiting the heirs from instituting further or additional actions seeking to appropriate or gain for themselves properties and assets of the estate of W. H. Grove, deceased, or the income or profits therefrom. In view of the state of the record, we do not perceive that it was proper to issue the injunction. In any event, the evidence falls short of the requisite that it show an intention on the part of the heirs to do something which would injure the bank, or that the enjoined actions were sufficiently threatening and certain as to have reasonably aroused its fear thereof. 24 Tex.Jur., pp. 145–146, secs. 103–104. For this reason, judgment in respect to the injunction cannot stand.

Judgment is reformed in respect to the injunction, and it is dissolved. As reformed, the judgment is affirmed.